Ray MARSHALL, Secretary of
Labor, Petitioner,

v.

KNUTSON CONSTRUCTION COMPANY
and Occupational Safety and Health Review Commission, Respondents.

No. 76–1979.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 19, 1977.

Decided Nov. 29, 1977.

Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation and Stephen A. Bokat, Atty., U. S. Dept. of Labor, Washington, D.C., for petitioner.

Timothy M. O'Brien, and Robert P. Christensen of Carlsen, Greiner & Law, Minneapolis, Minn., for respondent, Knutson Const. Co.

Before GIBSON, Chief Judge, VOGEL, Senior Circuit Judge, and BRIGHT, Circuit Judge.

PER CURIAM.

The principal issue on this appeal is whether the Occupational Safety and Health Review Commission (Commission) committed reversible error in determining that Respondent Knutson Construction Company was not in serious violation of § 5(a)(2) of the Occupational Safety and Health Act (Act), 29 U.S.C. § 654(a)(2), when a scaffold used by one of its subcontractors failed to comply with a safety standard promulgated by the Secretary of Labor (Secretary) under the Act. We have jurisdiction under 29 U.S.C. § 660(a).

Knutson was a general contractor at a large construction site. In that capacity, it subcontracted with Flower City Architectural Metals to furnish and install a curtain wall for the construction project. Flower City, in turn, subcontracted with Allstate Steel Erection, Inc., for the latter's performance of necessary steel erection.

In order to perform its work, Allstate rented an aluminum tubular welded scaffold from a scaffold company. Only employees of Allstate worked on the scaffold. The Commission found that Knutson's employees had access to the zone of danger underneath the scaffold, although Knutson disputes this.

Knutson employed a safety administrator who periodically performed inspections on the jobsite, for the purpose of discovering safety hazards including OSHA violations. If an unsafe condition was discovered, the safety administrator was to inform the appropriate project superintendent or foreman.

On January 19, 1972, the scaffold used by Allstate collapsed, injuring four Allstate employees who were working on it at the time. Thereafter, the scaffold was inspected by an OSHA area director and a compliance officer. Their inspection revealed a pre-existing crack, which was approximately one inch long and was located on the underside of the scaffold. The pre-existing crack had oxidized, resulting in a dulling of the aluminum. It was determined that the pre-existing crack contributed to the collapse of the scaffold by rendering it incapable of supporting the weight of the four employees. The inspection also revealed that the scaffold was not equipped with toe boards or a standard guard rail.

Prior to the accident, Knutson's safety administrator had inspected the scaffold on two different occasions. His inspection consisted of viewing the scaffold from a distance of approximately twenty feet. As a result of the inspections, the safety ad-

ministrator observed that the scaffold was not equipped with toe boards and had only a rope guard rail. However, he did not communicate this information to Allstate, or to the project superintendent or foreman. The safety administrator did not observe the crack in the scaffold during his inspections.

On these facts, the Secretary cited Knutson for violations of 29 U.S.C. § 654(a)(2),[1] pursuant to his authority under § 658(a). Knutson was cited for a "serious" violation [2] for failure to comply with the Occupational Safety Standards presently at 29 C.F.R. § 1926.451(a)(7) and (8), which provide:

§ 1926.451. Scaffolding.

  (a) General requirements.

    *    *    *    *    *    *

  (7) Scaffolds and their components shall be capable of supporting without failure at least 4 times the maximum intended load.

  (8) Any scaffold including accessories such as braces, brackets, trusses, screw legs, ladders, etc. damaged or weakened from any cause shall be immediately repaired or replaced.

Pursuant to § 666(b),[3] Knutson was assessed a penalty of $550 for this violation. Knutson was cited for a non-serious violation for failure to comply with the Occupational Safety Standard presently at 29 C.F.R.

§ 1926.451(a)(4). (Failure to equip a scaffold with guard rails and toe boards.) Pursuant to § 666(c),[4] Knutson was assessed a penalty of $55 for this violation.

Knutson contested the citations and penalties and a hearing was held before an Administrative Law Judge. The Administrative Law Judge vacated the citations for both the serious and non-serious violations on the basis that Knutson had no duty with respect to the safety standard violations by Allstate. Thereafter, discretionary review was granted by the full Commission pursuant to 29 U.S.C. § 661(i). The Commission decided, contrary to the Administrative Law Judge, that Knutson did have a duty with respect to the safety standard violations by Allstate. It concluded that Knutson had violated its duty with respect to 29 C.F.R. § 1926.451(a)(4) because, under the circumstances, it could reasonably have known that the scaffold lacked a standard guard rail and toe boards. Accordingly, it reversed the Administrative Law Judge and upheld the Secretary's citation and penalty for violation of that section. However, the Commission concluded that Knutson had not violated its duty with respect to 29 C.F.R. § 1926.451(a)(7) and (8) because, under the circumstances, Knutson could not reasonably have known that the scaffold was incapable of meeting the minimum weight requirement. Accordingly, it vacat-

---

**1.** 29 U.S.C. § 654(a)(2) provides:

  § 654. Duties of employers and employees

  (a) Each employer—

    *    *    *    *    *    *

  (2) shall comply with occupational safety and health standards promulgated under this chapter.

**2.** A "serious" violation is defined by 29 U.S.C. § 666(j) as follows:

  § 666. Civil and criminal penalties

    *    *    *    *    *    *

  (j) For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable

diligence, know of the presence of the violation.

**3.** § 666(b) provides:

  (b) Any employer who has received a citation for a serious violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, shall be assessed a civil penalty of up to $1,000 for each such violation.

**4.** § 666(c) provides:

  (c) Any employer who has received a citation for a violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of regulations prescribed pursuant to this chapter, and such violation is specifically determined not to be of a serious nature, may be assessed a civil penalty of up to $1,000 for each such violation.

ed the Secretary's citation and penalty for violation of these standards.

Pursuant to 29 U.S.C. § 660(a), the Secretary has petitioned this court to set aside the Commission's order vacating the citation for violation of 29 C.F.R. § 1926.-451(a)(7) and (8). The basis for its appeal is that the Commission erred in concluding that Knutson could not reasonably have known that the scaffold used by Allstate was in violation of 29 C.F.R. § 1926.-451(a)(7). Alternatively, the Secretary contends that the Commission erred in vacating the citation for serious violation without determining whether Knutson was in non-serious violation of the safety standards. The Commission's action regarding the citation for violation of 29 C.F.R. § 1926.451(a)(4) is not contested on appeal.

I

An employer has a duty to comply with the safety standards promulgated by the Secretary under the Act arising from § 654(a)(2).[5] In the typical case occurring under § 654(a)(2), the employer has either created or controlled the safety standard violation. The Commission has described the Secretary's burden of proof in this situation as follows:

> In the typical case arising under section 5(a)(2) of the Act (a case involving an employer at a common construction site is atypical) the Secretary carries his burden of proving a violation by establishing (1) that a specific standard applies to the facts, (2) that there was a failure to comply with the specific standard, and (3) that employees of the cited employer had access to the hazard.
>
> An employer may rebut the Secretary's allegations by showing (1) that the standard cited by the Secretary as the basis for his charge is not applicable to the situation at issue, (2) that the situation at issue was in compliance with the cited

standard, or (3) that its employees did not in fact have access to the hazard. *Anning-Johnson Co.*, CCH OSHD par. 20,-690, at 24,783 (1976).

The multi-employer construction worksite situation presents an additional consideration regarding employee safety. In this situation, a hazard created and controlled by one employer can affect the safety of employees of other employers on the site. In light of this facet, the Commission has stated that in this situation an employer will have a duty under § 654(a)(2) regarding safety standard violations which it did not create or fully control. *Anning-Johnson Co., supra* at 24,784; *Grossman Steel & Aluminum Corp.*, CCH OSHD par. 20,691, at 24,791 (1976).

The duty as outlined by the Commission in these decisions is a reasonable one. Employers who have no control, or only limited control, over the operations of other employers at the worksite, e. g., subcontractors, have a duty to exert reasonable efforts to protect their own employees from the safety standard violations of others. *Anning-Johnson Co., supra* at 24,784; *Grossman Steel & Aluminum Corp., supra* at 24,791. General contractors normally have the responsibility and the means to assure that other contractors fulfill their obligations with respect to employee safety where those obligations affect the construction worksite. Accordingly, the Commission has stated that it will hold a general contractor responsible under § 654(a)(2) for safety standard violations which "it could reasonably have been expected to prevent or abate by reason of its supervisory capacity." *Grossman Steel & Aluminum Corp., supra* at 24,791. Furthermore, the duty of a general contractor is not limited to the protection of its own employees from safety hazards, but extends to the protection of all the employees engaged at the worksite. *Id.; Anning-Johnson Co., supra* at 24,784.[6]

**5.** See note 1, *supra*.

**6.** Prior to its decisions in *Grossman Steel & Aluminum Corp.* and *Anning-Johnson Co.*, the Commission had taken the position that a general contractor was not responsible for safety

standard violations by its subcontractors when its own employees were not exposed to the violation. *See Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255 (4th Cir. 1974). In *Brennan*

The Commission here applied this interpretation of § 654(a)(2) in determining whether Knutson had violated its duty as a general contractor with respect to the safety standard violations by Allstate. The courts have treated the Commission's interpretations of the Act's provisions with deference and have not overturned its interpretations where they are reasonable and consistent with the purpose of the Act.[7] *See Brennan v. OSHRC (Underhill Construction Corp.)*, 513 F.2d 1032, 1038 (2d Cir. 1975); *Budd Co. v. OSHRC*, 513 F.2d 201, 204, 206 (3d Cir. 1975); *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1261–62 (4th Cir. 1974). We think that the Commission's interpretation of § 654(a)(2) as it applies to general contractors is reasonable and is consistent with the purpose of the Act.

## II

The Secretary does not contest the Commission's interpretation of the general application of § 654(a)(2) to the multi-employer construction site situation. Rather, it disagrees with the conclusion which the Commission reached in applying that standard to the particular facts of this case. Specifically, it contends that in light of the degree of control which Knutson exercised over the worksite, Knutson's duty under § 654 required it to load test the scaffold used by Allstate or to otherwise assure that the scaffold was capable of supporting four times its intended weight.

The scope of review for orders issued by the Commission pursuant to § 659(c) is governed by 29 U.S.C. § 660(a) and the Administrative Procedure Act, 5 U.S.C. § 706. *Dunlop v. Rockwell International*, 540 F.2d 1283, 1287–88 (6th Cir. 1976); *Horne Plumbing & Heating Co. v. OSHRC and Dunlop*, 528 F.2d 564, 567 (5th Cir. 1975); *Brennan v. OSHRC and Hendrix*, 511 F.2d 1139, 1141 (9th Cir. 1975). Initially we consider whether the Commission's factual

findings are "supported by substantial evidence on the record considered as a whole," which is the standard of review for questions of fact imposed by § 660(a). We note that "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N. L. R. B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951). After a careful review of the whole record, we have concluded that the Commission's findings of fact are supported by substantial evidence.

The Commission's conclusion that Knutson did not violate § 654(a)(2) is subject to 5 U.S.C. § 706(2)(A), which provides:

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\*  \*  \*  \*  \*  \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

In dealing with the application of § 706(2)(A), the Supreme Court has stated:

Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review

---

*v. OSHRC (Underhill Construction Corp.)*, 513 F.2d 1032, 1038 (2d Cir. 1975), the Second Circuit held that this position was inconsistent with the purposes of the Act.

7. The purpose and policy of the Occupational Safety and Health Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . ." 29 U.S.C. § 651(b).

is a narrow one. The court is not empowered to substitute its judgment for that of the agency." The agency must articulate a "rational connection between the facts found and the choice made." . . While we may not supply a reasoned basis for the agency's action that the agency itself has not given, . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. [Citations omitted.]

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974).

■ With these standards in mind, we turn to the Commission's decision. Under the Commission's test in *Grossman Steel & Aluminum Corp.* for determining whether a general contractor has violated its duty under § 654(a)(2) with respect to safety standard violations by its subcontractors, the relevant factors to be considered are (1) degree of supervisory capacity, (2) nature of the safety standard violation, and (3) nature and extent of precautionary measures taken. The Commission's decision indicates that it considered these factors. While its discussion of Knutson's supervisory capacity falls below the ideal, its consideration of that factor can be adequately discerned from its express application of the "supervisory capacity" test and its finding regarding Knutson's general safety inspection procedures at the worksite. It made rather extensive findings regarding the cause of the violation. It considered the safety inspection measures taken by Knutson regarding the defective scaffold. The Commission could have articulated its conclusion more precisely in terms of the test which it applied. However, we are able to discern a rational connection between the conclusion it reached and the facts it found. There is sufficient factual basis in the record to support its conclusion. Hence, we cannot say that the Commission acted arbitrarily and capriciously or that it abused its discretion. *See Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc., supra*, 419

U.S. at 290, 95 S.Ct. 438; *N.L.R.B. v. Hearst Publications, Inc.*, 322 U.S. 111, 130–31, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 188, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973).

The Secretary contends that the Commission's order must be reversed on the basis of our decision in *Brennan v. OSHRC and Vy Lactos Laboratories, Inc.*, 494 F.2d 460 (8th Cir. 1974). The Commission placed some emphasis on its finding that Knutson could not have detected the crack which caused the scaffold to collapse in reaching its conclusion that Knutson did not violate its duty. In the *Vy Lactos* case, we indicated that whether a hazard is a "recognized hazard" under § 654(a)(2) and whether an employer "could not with the exercise of reasonable diligence, know of the presence of the violation" under § 666(j) depends on the foreseeability of the general hazard rather than on the foreseeability of the accident as it actually occurred. 494 F.2d at 463. That case is distinguishable in that it dealt with an employer who had created a safety hazard and had taken no precautionary steps in protecting its employees from the hazard. The general contractor's duty with respect to safety standard violations by its subcontractors is not necessarily full compliance, but depends on what measures are commensurate with its degree of supervisory capacity. In this situation, the cause of the safety standard violation may be of some relevance in determining whether the general contractor could reasonably have been expected to prevent or abate it.

III

The Secretary also attacks the Commission's action as being an erroneous interpretation of the "reasonable diligence" clause of § 666(j). Section 666(j) determines when a penalty for a "serious" violation must be imposed under § 666(c).[8] It indicates that a serious violation does not occur where "the employer did not, or could not with the exercise of reasonable diligence, know of

8. *See* note 2, *supra*.

**602**

the presence of the violation." The Secretary argues as follows. Reasonable diligence required Knutson to load test the scaffold used by Allstate or to otherwise assure that the minimum weight requirement of 29 C.F.R. § 1926.451(a)(7) was satisfied. Had Knutson taken these measures, it would have known that Allstate's scaffold violated the safety standard. Hence, argues the Secretary, Knutson's conduct supports the assessment of a penalty for a "serious" violation.

In our reading of the Commission's decision, it does not reach the issue of whether Knutson's conduct would support a penalty for a "serious" violation, as defined by § 666(j). We do not think it was required to do so. For a civil penalty to be imposed against a general contractor under either § 666(b) (serious violation) or § 666(c) (non-serious violation) with respect to a safety standard violation by one of its subcontractors, there must first be a violation of its duty under § 654(a)(2) to comply with the safety standard. Since the Commission concluded that Knutson did not violate its duty to comply with 29 C.F.R. § 1926.-451(a)(7) and (8), and therefore vacated the citation for violation of those safety standards, it was not necessary that it inquire into whether Knutson's conduct would support a penalty for a "serious" violation of the standards. For the same reason, it was not necessary for the Commission to determine whether Knutson's conduct would support a penalty for a non-serious violation of the safety standards.

Accordingly, the order of the Commission is affirmed.