590 F.2d 273
 7 O.S.H. Cas.(BNA) 1004, 1979 O.S.H.D. (CCH) P 23,262
BRATTON CORPORATION, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Ray
Marshall, Secretary of Labor, Respondents.
 No. 78-1204.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 8, 1979.
Decided Jan. 16, 1979.
 
 Stanford C. Madden, Kansas City, Mo., argued and on brief, for petitioner.
 Lorelei Joy Borland, Dept. of Labor, Washington, D.C., argued for respondents; Carin A. Clauss, Sol., OSHRC, Benjamin W. Mintz, Associate Sol., OSHRC, Allen H. Feldman, Acting Counsel, Appellate Litigation, Dennis K. Kade, Asst. Counsel, Appellate Litigation, Thomas L. Holzman, Atty., U.S. Dept. of Labor, and T. A. Housh, Jr., Regional Sol., Washington, D.C., on brief.
 Before LAY, BRIGHT and ROSS, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Bratton Corporation (Bratton) brings this petition for review of a final order of the Occupational Safety and Health Review Commission (Commission) assessing a penalty against Bratton for exposing its employees to the hazards of a stairway without handrails and of unfilled metal pan-type stairway landings in violation of safety regulations issued under section 5(a)(2) of the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 654(a)(2) (1976). Bratton, a subcontractor at a multiemployer construction site, asserts that it cannot be held liable for the violations because it neither created nor had authority to abate the hazardous conditions. The Commission rejected that defense in the absence of any showing by Bratton that it took any realistic measures, as an alternative to literal compliance with the safety standards, to protect its employees from the known hazards. On review of the record, we affirm the Commission's decision.
 
 I.
 
 2
 Bratton was a subcontractor supplying and installing light steel structural items for the general contractor, Thomas Construction Company, in the construction of a six-story office building in Kansas City, Missouri. At an inspection of the construction site on January 9, 1975, an OSHA inspector observed that three of Bratton's employees had gained access to the third floor by climbing a metal stairway that did not have handrails and in which the hollow, pan-type landings between each flight of steps had not been filled with concrete.
 
 
 3
 Bratton had installed the metal stairway several weeks previously, but because of some problem in fitting, Bratton returned the handrails for reworking. The contract obligated the general contractor to fill the pan-type treads and landings of the stairway with concrete. The general contractor had filled the treads but not the landings.
 
 
 4
 The area director of the Department of Labor cited Bratton for two "nonserious" violations of section 5(a)(2) of OSHA:[1] the stairway without handrails as violating 29 C.F.R. 1926.500(e)(1), and the unfilled metal pan-type landings as violating 29 C.F.R. 1926.501(f).[2] The area director proposed a penalty of $45. Bratton contested the citations and penalty, and the issues were referred to Administrative Law Judge Alan M. Wienman for hearing.
 
 
 5
 The uncontradicted evidence produced at the hearing established that Bratton's employees were exposed to hazards caused by violations of the handrail and stair landing regulations and that Bratton knew of these hazards. Judge Wienman upheld the citation for the handrail violation, finding that the lack of handrails was caused by Bratton's delay in performing its contractual duty. However, he vacated the citation for the unfilled landings because
 
 
 6
 concrete work involved in filling the pan forms was not the contractual responsibility of (Bratton) and not within the jurisdiction of the ironworkers employed by respondent.
 
 
 7
 In so ruling, Judge Wienman relied on Anning-Johnson Co. v. OS&HRC, 516 F.2d 1081 (7th Cir. 1975), in which the Seventh Circuit absolved a subcontractor of liability for a nonserious violation of OSHA safety standards where that subcontractor neither created nor had contractual authority to remedy the violation. Judge Wienman reduced the penalty assessed against Bratton from $45 to $25.
 
 
 8
 On petitions by both Bratton and the Secretary of Labor, the Commission granted discretionary review and determined that the uncontradicted evidence established Bratton's liability for both of the violations cited. However, the Commission afforded Bratton the opportunity to introduce additional evidence as to the defenses announced in Anning-Johnson Co., 76 OSAHRC 54/A2, 4 BNA OSHC 1193, CCH OSHD P 20,690 (Nos. 3694 & 4409, 1976), and Grossman Steel & Aluminum Corp., 76 OSAHRC 54/D9, 4 BNA OSHC 1185, CCH OSHD P 20,691 (No. 12775, 1976), cases decided subsequent to the hearing before Judge Wienman.
 
 
 9
 In those decisions, the Commission held that a subcontractor on a multiemployer construction site, who neither created nor controlled a condition in violation of safety standards, may defend against liability under OSHA by showing either that (1) it took realistic steps, as an alternative to literal compliance with the standards, to protect its employees, or (2) it neither knew nor reasonably could have known of the violation. Anning-Johnson Co., supra, (1975-1976) CCH OSHD at 24,783-24,784; Grossman Steel & Aluminum Corp., supra, (1975-1976) CCH OSHD at 24,791. See Central of Georgia R. Co. v. OS&HRC, 576 F.2d 620, 624 (5th Cir. 1978).
 
 
 10
 Bratton did not avail itself of the opportunity to present additional evidence. Bratton now contends that Anning-Johnson Co. v. OS&HRC, 516 F.2d 1081 (7th Cir. 1975), precludes any finding of liability for either alleged violation under 29 U.S.C. § 654(a)(2), because Bratton did not create either hazard and "had no authority to abate (these) hazards caused by the acts or omissions of other contractors."[3]
 
 II.
 
 11
 The Commission in this case applied its interpretation of 29 U.S.C. § 654(a) (2) (1976), as enunciated in its decisions in Anning-Johnson Co., supra, and Grossman Steel & Aluminum Corp., supra. We are obligated to treat the Commission's interpretations of OSHA with deference and will not overturn those interpretations where they are reasonable and consistent with the purposes of OSHA.[4] See Marshall v. Knutson Construction Co., 566 F.2d 596, 600 (8th Cir. 1977).
 
 
 12
 We have already approved the Commission's application of its rule in Anning-Johnson and Grossman Steel to a general contractor on a multiemployer construction site. See Marshall v. Knutson Construction Co., supra.[5] Here, we deal with the complementary situation of a subcontractor whose employees were exposed to hazards created or controlled by the general contractor.
 
 
 13
 Bratton attacks the substance of the Anning-Johnson/Grossman rule as inconsistent with the holding of the Seventh Circuit in Anning-Johnson Co. v. OS&HRC, supra.[6] Bratton also relies on the dissent of Commissioner Moran in Grossman Steel, which argues that to hold a subcontractor liable for safety violations caused by another employer will cause confusion as to who must abate a violation and will jeopardize the employer's right to know what is expected under OSHA. Grossman Steel & Aluminum Corp., supra, (1975-1976) CCH OSHD at 24,793. See Anning-Johnson Co. v. OS&HRC, supra, 516 F.2d at 1089. In addition, Bratton argues that the Commissioner's rule improperly allocates to the subcontractor the burden of proof as to whether it caused the violation and whether it took reasonable measures to protect its employees.
 
 
 14
 Regarding the allocation of burdens of proof, the Commission stated in Anning-Johnson :
 
 
 15
 We find that an employer has greater access to proof of facts with regard to * * * whether it created or controlled a particular hazard or whether it had or would reasonably be expected to have notice of a particular hazard. Under such circumstances, it is only reasonable to place the burden of proving such issues on the employer. (Anning-Johnson Co., (1975-1976) CCH OSHD at 24,783 n. 14.)
 
 
 16
 In Grossman Steel, the Commission further stated:
 
 
 17
 (T)he knowledge of what steps an employer has taken to have a violation corrected by another contractor or to protect its own employees is peculiarily within the knowledge of that employer * * * . Accordingly, it is appropriate to consider this issue to be an affirmative defense, and to place the burden of proof on the employer asserting the defense. (Grossman Steel & Aluminum Corp., (1975-1976) CCH OSHD at 24,792.)
 
 
 18
 We think the Commission's allocation of the burden of proof on these issues is reasonable and consistent with the purposes of OSHA. See Central of Georgia R. Co. v. OS&HRC, 576 F.2d 620, 624 (5th Cir. 1978).
 
 
 19
 The duty of an employer to protect its employees from hazards created by others did not originate with Anning-Johnson and Grossman Steel. Prior Commission decisions interpreting 29 U.S.C. § 654(a)(2) held an employer liable whenever its employees were exposed to any violation of safety regulations, regardless of who caused the violation. See, e. g., Robert E. Lee Plumbers, Inc., 17 OSAHRC 639, 3 BNA OSHC 1150, CCH ESHG P 19,594 (1975); R.H. Bishop Co., 8 OSAHRC 930 (1974).
 
 
 20
 In Anning-Johnson Co. v. OS&HRC, supra, the Seventh Circuit deemed this "strict liability" approach as inconsistent with the purposes of OSHA when applied to nonserious violations over which the cited employer had no control. The Commission in Anning-Johnson and Grossman Steel agreed with the Seventh Circuit's rejection of strict liability, but it went beyond that holding by requiring a noncontrolling employer to "take reasonable steps to protect its employees against known hazards which the employer can reasonably be expected to detect." Grossman Steel & Aluminum Corp., supra, (1975-1976) CCH OSHD at 24,791-24,792. See Anning-Johnson Co., supra, (1975-1976) CCH OSHD at 24,784. The Commission explained the reason for this rule as follows:
 
 
 21
 (A) subcontractor cannot be permitted to close its eyes to hazards to which its employees are exposed, or to ignore hazards of which it has actual knowledge. As noted above, each employer has primary responsibility for the safety of its own employees. Simply because the subcontractor cannot himself abate a violative condition does not mean it is powerless to protect its employees. It can, for example, attempt to have the general contractor correct the condition, attempt to persuade the employer responsible for the condition to correct it, instruct its employees to avoid the area where the hazard exists if this alternative is practical, or in some instances provide an alternative means of protection against the hazard. (Grossman Steel & Aluminum Corp., (1975-1976) CCH OSHD P 20,691 at 24,791.)
 
 
 22
 Under the record in this case, we cannot say that the Commission's construction of 29 U.S.C. § 654(a)(2), as applied to a subcontractor on a multiemployer worksite, is unreasonable or inconsistent with the purposes of OSHA. We therefore apply that construction of the Act in this case.[7] See Marshall v. Knutson Construction Co., 566 F.2d 596, 600 (8th Cir. 1977).
 
 
 23
 The evidence establishing Bratton's liability for the handrail and unfilled landing violations under the Anning-Johnson/Grossman rule is uncontradicted. The Commission correctly concluded that Bratton did not establish a defense as to either violation.
 
 
 24
 Accordingly, we affirm the Commission's order.
 
 
 
 [1]
 29 U.S.C. § 654(a)(2) provides:
 § 654. Duties of employers and employees
 (a) Each employer
 (2) shall comply with occupational safety and health standards promulgated under this Act.
 
 
 [2]
 29 C.F.R. 1926.500(e)(1) provides:
 (e) Stairway railings and guards. (1) Every flight of stairs having four or more risers shall be equipped with standard stair railings or standard handrails * * * .
 
 
 [29]
 C.F.R. 1926.501(f) provides:
 (f) Permanent steel or other metal stairways, and landings with hollow pan-type treads that are to be filled with concrete or other materials, when used during construction, shall be filled to the level of the nosing with solid material. * * *
 
 
 [3]
 Bratton also asserts that the administrative law judge's finding that Bratton caused the handrail violation is without evidentiary support. This factual issue is not before us because the Commission assumed that Bratton carried its burden of showing lack of control to erect temporary handrails. The facts on which the Commission found liability are not disputed. Thus, the sole issue here is the correctness of the Commission's interpretation of 29 U.S.C. § 654(a)(2)
 
 
 [4]
 The purpose of the Occupational Safety and Health Act of 1970 is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions * * * ." 29 U.S.C. § 651(b). The Act is not nor could it be designed to eliminate all occupational hazards. Rather, it is intended to require
 a good faith effort to balance the need of workers to have a sale (sic) and healthy work environment against the requirement of industry to function without undue interference.
 Subcomm. on Labor of Senate Comm. on Labor and Public Welfare, Legislative History of the Occupational Safety and Health Act of 1970 (Comm. Print 1971) (remarks of Senator Williams). See Anning-Johnson Co. v. OS&HRC, 516 F.2d 1081, 1088 (7th Cir. 1975).
 
 
 [5]
 In that case, we described the Anning-Johnson/Grossman rule as follows:
 An employer has a duty to comply with the safety standards promulgated by the Secretary under the Act arising from § 654(a)(2). In the typical case occurring under § 654(a)(2), the employer has either created or controlled the safety standard violation. The Commission has described the Secretary's burden of proof in this situation as follows:
 In the typical case arising under section 5(a)(2) of the Act (a case involving an employer at a common construction site is atypical) the Secretary carries his burden of proving a violation by establishing (1) that a specific standard applies to the facts, (2) that there was a failure to comply with the specific standard, and (3) that employees of the cited employer had access to the hazard.
 An employer may rebut the Secretary's allegations by showing (1) that the standard cited by the Secretary as the basis for his charge is not applicable to the situation at issue, (2) that the situation at issue was in compliance with the cited standard, or (3) that its employees did not in fact have access to the hazard.
 Anning-Johnson Co., CCH OSHD par. 20,690, at 24,783 (1976).
 The multi-employer construction work-site situation presents an additional consideration regarding employee safety. In this situation, a hazard created and controlled by one employer can affect the safety of employees of other employers on the site. In light of this facet, the Commission has stated that in this situation an employer will have a duty under § 654(a)(2) regarding safety standard violations which it did not create or fully control. Anning-Johnson Co., supra at 24,784; Grossman Steel & Aluminum Corp., CCH OSHD par. 20,691, at 24,791 (1976).
 The duty as outlined by the Commission in these decisions is a reasonable one. Employers who have no control, or only limited control, over the operations of other employers at the worksite, e. g., subcontractors, have a duty to exert reasonable efforts to protect their own employees from the safety standard violations of others. (Marshall v. Knutson Construction Co., 566 F.2d 596, 599 (8th Cir. 1977) (footnote omitted).)
 
 
 [6]
 The Anning-Johnson Company was the petitioner in both the Seventh Circuit decision reported at 516 F.2d 1081 (1975) and the Commission's decision to which we have made reference, but the two cases are not related
 
 
 [7]
 In addition to its other contentions, Bratton complains of the "penetrating hindsight" of the Commission in announcing the Anning-Johnson/Grossman rule some eight months after the hearing in this case. Taking this as a claim that the rule should not be retroactively applied, we reject that argument in these circumstances. The Anning-Johnson and Grossman Steel decisions did not impose on Bratton new duties to protect its employees that the employer did not already bear under prior decisions of the Commission, but rather added defenses to liability under OSHA that were previously unavailable