**Alan Stuart COHEN, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent,**

**and**

**Republic Airlines, Inc.,**
**Intervenor-Respondent.**

**No. 80–2007.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1981.

Decided Aug. 31, 1981.

Raymond J. Rasenberger, Stephen E. Smith (argued), Zuckert, Scoutt & Rasenberger, Washington, D.C., for intervenor-respondent Republic Airlines, Inc.

David M. Kirstein, Gen. Counsel, Michael Schopf, Deputy Gen. Counsel, Glen M. Bendixsen, Associate Gen. Counsel, Barbara Thorson, Atty. (argued), Civil Aeronautics Board, Washington, D.C., Sanford M. Litvack, Asst. Atty. Gen., Robert B. Nicholson, Daniel J. Conway, Attys., Dept. of Justice, Washington, D.C., for respondent.

Thomas E. Ticen & Associates Ltd., Minneapolis, Minn., for petitioner.

Before HEANEY and HENLEY, Circuit Judges, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

This is an appeal from an order of the Civil Aeronautics Board (CAB) denying the petitioner Alan Stuart Cohen's request for arbitration. More specifically, Cohen seeks arbitration on the issue of whether the proposed change of his job classification from counter work to ground work violates section 12 of the Labor Protective Provisions (LPPs) issued by the CAB to govern during the course of a merger. The CAB denied Cohen's request. We affirm.

Cohen was employed by Southern Airways as a station agent for eight months prior to Southern's merger with North Central. The merger took place on July 1, 1979, and the two companies began doing business as Republic Airways, Inc. As a station agent with Southern Cohen did counter and ground work. As his seniority increased Cohen performed more counter work.

A few weeks prior to the merger Cohen learned that he would be classified as a station agent with Republic after the merger, which under the North Central union rules (the controlling postmerger rules) entailed ground work only.[1] Dissatisfied with the expected change in his work classification, Cohen sought out his possible alternatives. There were three. He was told that if he resigned from his job with Southern prior to the merger he could be considered for a passenger service agent position with

---

* Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation.

1. Southern station agents could work both counter and ground; a station agent classification with North Central was limited to ground work only. North Central used a separate classification, passenger services agent, to denote counter work.

Republic on a new hire basis. In connection with this position Cohen was aware that as a new hire he would be required to pass a two week training program and a 90 day probationary period before he would be given a permanent position. The second alternative was to remain in his position with Southern, fall under the North Central union rules upon the merger, be reclassified to ground work, and after two years be eligible to bid on a job with a higher classification. Third, Cohen could remain in his position through the merger date and request arbitration of his reclassification to ground work.

On the basis of an oral promise by North Central management of a reservation trainee position Cohen resigned from Southern on June 30, 1979, one day prior to the merger. When Republic failed to give him a starting date, Cohen, on July 23, 1979, petitioned the CAB to exercise its jurisdiction over the merger and submit his case to arbitration. Cohen alleged that after "acting solely on (the) representations only" of Republic and resigning from Southern, he was never given a starting date. On July 24, 1979, however, the CAB received a motion for dismissal without prejudice of Cohen's claim based on the fact that Republic had given him a starting date.

On November 12, 1979, Cohen was terminated from Republic. He was told that he had failed to achieve acceptable ratings as a reservations trainee on his 45 and 75 day reports. On November 27, 1979, Cohen filed a second petition with the CAB requesting arbitration of the total case. He maintained that he had done an excellent job as a reservations trainee and that his supervisor had fabricated all of his probation reports.

The CAB initially noted that the sole question arising out of petitions to enforce a duty to arbitrate under the LPPs is "whether the underlying claim is one for which relief could be granted under the terms of the labor protective provisions." *North Central-Southern Merger Case (Peti-*

*tion of Alan Cohen),* Order 80–4–135 April 17, 1980. The CAB does not inquire into the merits of the claim but looks only at whether the claim falls within the protection offered by the LPPs.

The CAB then dismissed as moot Cohen's first petition, filed July 23, 1979. The CAB held that not only was it voluntarily withdrawn but further that Cohen's employment by Republic as promised remedied the situation about which the petition was filed. Turning to the second petition the CAB held that Cohen's allegation that his supervisor at Republic had fabricated reports thereby preventing him from passing his probationary period did not constitute a grievance under the LPPs. There was no charge that his failure to obtain a permanent position at Republic was due to the merger, but instead concerned his qualifications to perform the reservations job and that issue is not one arbitrable under the LPPs since it has nothing to do with the merger.

Cohen then petitioned for and was denied reconsideration by the CAB. The CAB reiterated that the issue of Cohen's competence as a reservations agent was a matter outside the scope of the LPPs. At that time Cohen alleged that the issue was not his competence at Republic but rather whether his resignation from Southern was voluntary.[2] The CAB held that there was no evidence in the record that Cohen's selection from the three alternatives available to him was not freely made. The CAB also addressed the allegation made by Cohen that his resignation was invalid because Republic insisted that before it hired him he had to withdraw the first petition filed by him with the CAB. First the CAB noted that Cohen's withdrawal of the petition was voluntary. In any event, the CAB stated, the first petition was directed solely at Republic's alleged failure to hire him and was remedied by his subsequent hiring. It did not have any bearing on the issue before the CAB, whether Cohen could be treated for LPP purposes as though he had not

2. Also on the motion for reconsideration Cohen, for the first time, alleged health reasons

for his unwillingness to accept the reclassification to ground work only.

resigned from Southern. The CAB denied reconsideration.

Cohen then filed this appeal. On appeal Cohen seeks an order for arbitration on the issue of whether the decision of Republic to reassign him from counter to ground work following the merger constituted a violation of the LPPs. Cohen alleges that the decision of the CAB was not supported by the evidence, and was arbitrary and capricious. Cohen argues that his resignation was not voluntary since it was forced upon him by health reasons and by Republic's insistence that he resign before it would hire him. We note here that the health reason was only alleged in a supplemental brief on Cohen's request for reconsideration by the CAB. It had never been before the CAB.

■ The standard of review employed by this Court of agency action is governed by the Administrative Procedures Act, 5 U.S.C. sections 701–706 (1976) (APA). Under the APA "a reviewing court is directed to hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or . . . unsupported by substantial evidence." *Medical Center of Independence v. Harris*, 628 F.2d 1113, 1117 (8th Cir. 1980). "This court has recognized that an administrative agency's interpretation of its own regulations deserves considerable deference by a reviewing court." *Id. See also Columbus Community Hospital, Inc. v. Califano*, 614 F.2d 181 (8th Cir. 1980). Therefore, the question in each case is whether substantial evidence in the record as a whole supports the final administrative determination. *Medical Center of Independence v. Harris, supra, citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951); *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). This standard is a narrow one. "The court is not empowered to substitute its judgment for that of the agency." *Marshall v. Knutson Const. Co.*, 566 F.2d 596, 601 (8th Cir. 1977), *quoting Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974).

■ With these standards in mind we can come to no other conclusion than that the decision of the CAB was supported by substantial evidence and not arbitrary or capricious. An examination of the record reveals that the CAB made a reasoned decision drawn from the facts before it.

We have examined all the alternatives available to Cohen, the route chosen by him, its results, and can only conclude that what he seeks now is for this Court to remedy a poor decision on his part. Cohen was aware of the three alternatives available to him. He chose resignation over remaining in his position and later bidding for a better classification, or remaining and seeking arbitration of his reclassification. Had he remained in his position Cohen may have eventually had a result similar to that reached in the *Joan Esser* case. *North Central-Southern Merger Case (Petition of Joan Esser)*, Order 80–1–90, January 15, 1980. Esser remained on the job and requested that her reclassification be submitted to arbitration. The CAB granted her request. Cohen, on the other hand, sought a different alternative which in the long run did not work out as he had anticipated. He now seeks for us to undo the results of what we can only conclude was his poor judgment, and to order arbitration of his reclassification—one of the alternatives he earlier refused.

Cohen argues that the original resignation from Southern was not voluntary. We must defer on this point to the findings of the CAB and agree with it that there is no evidence in the record that his choice was not voluntarily made. He was aware of the alternatives and chose resignation. The fact that he would become a probationary employee was also known to him. Our review is limited to whether the decision of the CAB is based on substantial evidence. We find that it is.

■ On his motion for reconsideration Cohen contended that his resignation from Southern was not voluntary because it was

forced upon him for health reasons. He alleges that Bronchial Asthma and Rhinitis prevented him from accepting the proposed reclassification to ground work. This was the only new matter alleged by Cohen.

We find this argument to be untimely and lacking in merit. Our scope of review is limited to those objections to an order of the CAB that were urged before it "or, if not so urged, unless there were reasonable grounds for failure to do so." 49 U.S.C. section 1486 (1970). The bare mention of his physical condition in his supplemental pleading before the CAB on his motion for reconsideration in no way satisfies the requirements of the statute so as to permit review. "As a practical matter, we cannot exercise an appellate function in the review of administrative matters unless the problems have been fully aired and focused in the proceedings below." *Air Line Pilots Association International v. CAB*, 502 F.2d 453, 457 (D.C.Cir.1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1391, 43 L.Ed.2d 652 (1975). *See also Aloha Airlines, Inc. v. CAB*, 598 F.2d 250, 259 (D.C.Cir.1979).

The first time Cohen alleged health reasons was in a supplemental brief submitted one month after his motion for reconsideration. He had both the opportunity and incentive to raise the matter in pre-merger discussions with Republic officials where he expressed concern over possible reclassification to exclusively ground work. Further, ground work constituted one-half of the work Cohen did as a station agent for Southern. There is no evidence in the record that this condition ever presented a problem to Cohen when he did ground work. In his application to Republic Cohen stated that he had no physical condition which would limit his job assignment or ability to work. We find that not only is this allegation not properly raised on this appeal but upon consideration of its merits is not supported by any evidence.

Affirmed.