NO. 07-01-0472-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 7, 2003


______________________________



LEONE PLUMMER
,




 Appellant


v.



CHARLENE REEVES, 




 Appellee

_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 37,940-C; HON. PATRICK A. PIRTLE, PRESIDING


_______________________________



Before JOHNSON, CJ., QUINN, J., and BOYD, SJ. (1)

 Appellant Dr. Leone Plummer (Plummer) acting pro se has filed (for the third time)
a brief in this matter which does not comply with the Rules of Appellate Procedure. For
the reasons expressed, we dismiss the appeal. 

 Dr. Plummer's brief was originally due to be filed on October 18, 2002. On
November 4, 2002, her husband, Dennis wrote a letter stating that he was representing
his wife and requested an extension of time to file her brief. He also represented that the
doctor was in bankruptcy. In response, this court requested by letter dated November 13,
2002, that Plummer provide proof of a bankruptcy proceeding within ten days and proof
that Dennis Plummer was a licensed attorney with a State Bar of Texas identification
number. Without providing the requested information, appellant filed on November 25,
2002, what purported to be her "Appeals Brief" which was signed by Dennis Plummer. By
letter dated November 25, 2002, this court struck the brief because there was no showing
that Dennis Plummer was a licensed attorney and ordered that Plummer file a brief by
December 9, 2002. We also warned her that the failure to so file a brief would result in
dismissal for want of prosecution. 

 Dr. Plummer filed her brief by the required date, but it failed to comply with the
Rules of Appellate Procedure in numerous respects (e.g., no identity of parties and
counsel, no table of contents, no index of authorities, no statement of the case, no
summary of the argument, no citations to legal authority or the record, and no appendix). 
She was then advised by document dated December 13, 2002, that she should file a brief 
in compliance with Rule of Appellate Procedure 38.1 and any other applicable rules by
December 27, 2002, or the appeal would be dismissed. On December 27, appellant filed
her third brief. However, it still failed to comply with the Rules of Appellate Procedure in
that it contained only sporadic citation to the record (despite her lengthy allusions to
purported facts appearing of record) and no citation to any legal authority to support her
ten issues. See Tex. R. App. P. 38.1(h). That she knew of her duty to cite to legal
authority is exemplified by her statement in her brief that she cited to none because "[s]he
is not an attorney and is not trained as an attorney." Why she was unable to visit the
Potter County Law Library and conduct research on her own, as do other lay people, goes
unexplained. Similarly unexplained is whether the doctor lacked the physical or
educational ability to read, understand indexes and tables of content, or otherwise conduct
research on her own behalf. Simply stating that one opts to forego researching the law
because he is not an attorney is unacceptable, especially when 1) that person has an
education, 2) that person illustrates no effort to discover or obtain pertinent authority, and
3) the law is one of the most indexed bodies of writing in existence. 

 A point of error unsupported by citation of any legal authority presents nothing for
the court to review. Marsh v. Wallace, 924 S.W.2d 423, 425 (Tex. App.--Austin 1996, no
writ); Richard v. Cornerstone Constructors, Inc., 921 S.W.2d 465, 469 (Tex.
App.--Houston [1st Dist.] 1996, writ denied). Further, pro se litigants are held to the same
standards as licensed attorneys and must comply with all applicable rules of procedure. 
Holt v. F.F. Enterprises, 990 S.W.2d 756, 759 (Tex. App.--Amarillo 1998, pet. denied). 
Next, upon flagrant violation of the briefing rules and the litigant's tender of a second non-conforming brief, we may strike the brief, prohibit the party from filing another, and proceed
as if the party failed to file a brief. Tex. R. App. P. 38.9(a). And, if an appellant fails to
timely file a brief, the appeal may be dismissed for want of prosecution. Tex. R. App. P.
38.8(a)(1). 

 Finally, as judges, we are to be neutral and unbiased adjudicators of the dispute
before us. Our being placed in the position of conducting research to find authority
supporting legal propositions uttered by a litigant when the litigant has opted not to search
for same runs afoul of that ideal, however. Under that circumstance, we are no longer
unbiased, but rather become an advocate for the party.

 Our having thrice given Dr. Plummer opportunity to comply with the briefing
requirements of the Texas Rules of Appellate Procedure, our having warned her at least
twice about the consequence of her failing to comply, her having thrice failed to tender a
brief that complies with those rules while recognizing her obligation under those rules, and
her having failed to reasonably explain why she chose not to comply, we hereby dismiss
the appeal for want of prosecution.


 


 Per Curiam

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon 1998). 


" Priority="62" SemiHidden="false"
 UnhideWhenUsed="false" Name="Light Grid Accent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00047-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



DECEMBER
29, 2010

 



 

MICHAEL LEE JENNINGS, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 47TH DISTRICT COURT OF RANDALL
COUNTY;

 

NO. 19,694-A; HONORABLE HAL MINER, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant Michael
Jennings appeals from his jury conviction of the offense of sexual assault[1]
and his sentence of imprisonment for a term of five years and a $10,000
fine.  The confinement and $8,000 of the
fine were suspended in favor of probation for five years.  Through three issues, appellant contends the
evidence was insufficient to support his conviction and the trial court erred
in admitting hearsay testimony.  We will
affirm.  

Background

Much of the
evidence showing the events leading to appellants prosecution is
undisputed.  Appellant arranged for
another man, Richard Hughes, to engage in sexual contact with appellants wife,
in their bedroom and in appellants presence. 
The contested issues involve her consent to the arrangement and the
nature of appellants actions.  

Appellant and his
wife were married in April 2002. 
Following the birth of their first child in 2003, the couples sex life
deteriorated, frustrating appellant.  In
November 2007, however, they learned she was pregnant with their second
child.  On December 15 of that year, with
his wifes agreement, appellant bathed and blindfolded her before they engaged
in oral sex and sexual intercourse without incident.  

Then on the
evening of December 22, appellant again set the same scene, starting with a
bath for his wife and ending with her blindfolded on the bed in a
nightgown.  As his wife described the
events for the jury, she felt someone approach the bed, move her nightgown up
and spread her legs, and felt oral sex begin. 
It felt different, and she believed something was wrong.  When she said honey, appellant responded, Im
right here, but his voice came from several feet away.  She looked out from under the blindfold and
saw one Afigure@ coming toward her
and another moving away from her. 
Appellant laid down on the bed next to her, pulling her toward him.  According to her testimony, she said, Athat wasn=t you.@  He said Ayes, it was.@  She then said Athere=s somebody else
here.@  Appellant denied it. She took off her
blindfold and saw a face reflected in the atrium window.  Entering the bathroom and turning on the light,
she found a man, Hughes, she did not know. 
She ordered Hughes out of her house.  


Hughes
testified at trial, under immunity, that an acquaintance named AKat@
approached him on an Aadult friend finder@
internet site about a week before December 22, concerning a Athreesome.@  AKat@ put
appellant and Hughes in contact and the two engaged in several computer
conversations.  Hughes agreed to the
arrangement, agreed to wear certain clothing, and agreed not to speak when he
was in the room. He arrived at the couple=s home
on December 22. Hughes waited outside for about thirty minutes and then saw
appellant=s signal.  He went into the house and was led into the
bedroom.  The complainant was on the bed
and appellant spread her legs apart with his hands.  Hughes knelt down and began to perform oral
sex on her.  When she called out for
appellant, he signaled Hughes to go into the bathroom. The complainant came
into the bathroom a few minutes later and was Avery
riled,@ asked
him who he was and vehemently told him to leave.  Hughes testified appellant led him to believe
the complainant had consented to the sexual activity.  He said appellant did not tell him she was
pregnant.  

The
jury also heard appellant=s side of the story.  He told the jury he and his wife had
discussed having a Athreesome@ several
times over the years and in December, she agreed.  He entered an online chat room and located
Hughes through an online acquaintance, a woman named AKat@,[2]
who was interested in having a Athreesome@ with
the couple.  They exchanged photographs
and agreed on the date.  He told Hughes
what to wear, to wait outside until he turned the porch light on and off, and
not to speak when he entered the house. 
He also testified that when Hughes performed oral sex on his wife, Ashe
got cold feet@ and that she Acouldn=t go
through with it.@  Appellant admitted the complainant told
Hughes to get out of the house and that she was very upset.  

Appellant
testified the couple remained together until January 2008 when his business
failed. He also presented testimony showing his wifes normal behavior at
Christmas events.  It was not until
February 1, 2008, that his wife reported the assault to police.  Appellant was indicted and arrested that
month, and filed for divorce in April 2008. 


The indictment
charged appellant with Athen and there intentionally and knowingly
caus[ing] the female sexual organ of [the complainant] to contact the mouth of
[Hughes], without [the complainant=s] consent.@  After his plea of not guilty, the case was
tried to a jury.

 

 

 

Analysis

Sufficiency of the Evidence

In appellant=s first two
issues, he contends the evidence presented at trial was insufficient to support
his conviction.  Appellant argues the
sexual activity that occurred on December 22 was consensual, and that his
participation in the events cannot justify his conviction. 

In reviewing
issues of evidentiary sufficiency, an appellate court views the evidence in the
light most favorable to the verdict to determine whether, based on that
evidence and reasonable inferences therefrom, a rational jury could have found
each element of the offense beyond a reasonable doubt.  Brooks v. State, No. PD-0210-09, 2010 Tex.Crim.App.
LEXIS 1240 (Tex.Crim.App. Oct. 6, 2010); Swearingen v. State, 101 S.W.3d
89, 95 (Tex.Crim.App. 2003); Conner v. State, 67 S.W.3d 192, 197
(Tex.Crim.App. 2001), citing Jackson v. Virginia, 443 U.S. 307, 319, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979).  If,
given all the evidence, a rational jury would necessarily entertain a
reasonable doubt of the defendant=s guilt, due
process requires that we reverse and order a judgment of acquittal.  Swearingen, 101 S.W.3d at 95, citing
Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), cert.
denied, 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).  All evidence, whether properly or improperly admitted, will be
considered when reviewing the evidence for legal sufficiency.  Johnson v. State, 967 S.W.2d 410, 411
(Tex.Crim.App. 1998).

Under
Penal Code ' 22.011(a)(1)(c),[3]
a person commits an offense if he intentionally or knowingly Acauses
the sexual organ of another person, without that person's consent, to contact
or penetrate the mouth, anus, or sexual organ of another person, including the
actor.@  Section 22.011 contains definitions of
conduct occurring without consent.  The
charge instructed the jury that the definition applicable here required
the State to show appellants wife did not consent to the sexual assault and
was unaware that the sexual assault is occurring.  Tex. Penal Code Ann. § 22.011(b)(5) (Vernon
Supp. 2010).

            Appellant asserts the State sought
to hold him responsible for the conduct of Hughes.  He argues the evidence does not support a
finding he was the primary actor; instead, the evidence shows he was Amerely
present@ on
the night of the assault. He argues also that because Hughes did not act with
the requisite culpability and because appellant did not himself engage in
non-consensual sexual contact with his wife, the evidence is insufficient to
show him guilty of sexual assault.  The
argument misperceives the application of section 22.011(a)(1)(c) in this
case.  

  The indictment charged appellant as the
primary actor in the sexual assault of his wife.  There was no allegation charging appellant as
a party to the offense.  The language of
the statute contemplates the participation of a third party in sexual
assaults.  Section 22.011(a)(1)(C)
criminalizes the intentional or knowing act of causing the sexual organ of
another person, without that persons consent, to contact, inter alia, the
mouth of another person, including the actor. 
The phrase including the actor makes clear that the defendant may, but
need not be, the person whose mouth is caused to contact the sexual organ of
another person.  It is sufficient for
guilt under § 22.011(a)(1)(C) that the defendant causes the unlawful contact.[4]
 Tex. Penal Code Ann. § 22.011
(Vernon Supp. 2010). Here, the actor was appellant, not Hughes.  The State undertook to prove that appellant,
as the actor, caused his wifes sexual organ to contact Hughess mouth, without
her consent.  This is conduct proscribed
by the statute.  

Appellant relies on Kimberlin v. State, 877 S.W.2d
828 (Tex.App.BFort Worth 1994, pet. ref=d), in which the
court found the evidence legally insufficient to show the defendant had sexual
contact with the victim.  However, the
indictment and court=s charge in that case required contact
between the defendants mouth and the victims sexual organ for
conviction.  Id. at 832.  Appellant was
not prosecuted for contacting his wifes sexual organ with his own mouth.  We thus find Kimberlin
distinguishable.[5]

As
noted, under the courts charge, the State was required to prove also that
appellant knew his wife was unaware that a sexual assault was occurring.  See Tex. 
Penal Code Ann. § 22.011(b)(5) (Vernon Supp. 2010).  The definition of lack of consent contained in § 22.011(b)(5)
commonly has been applied in cases in which the victim was asleep when sexual
contact was initiated.  See, e.g., Rodriguez v. State, No.
13-06-00691-CR, 2008 Tex.App. LEXIS 9113 (Tex.App.Corpus Christi December 4,
2008, no pet.); Jezierski v. State,
No. 01-04-00755-CR, 2005 Tex.App. LEXIS 5475 (Tex.App.Houston [1st
Dist.] July 14, 2005, pet. refd) (mem. op., not designated for publication); Cearley v. State, No. 07-98-0109-CR,
1998 Tex.App. LEXIS 7861 (Tex.App.Amarillo December 18, 1998, pet. refd)
(mem. op., not designated for publication). 
In those cases, the sleeping victim did not consent to any sexual act
and presumably initially was not aware any sexual contact was occurring.  

As
this court previously has noted, however, that a sexual assault victim becomes
aware that an assault is occurring does not defeat the actors guilt, because
the assault already has occurred.  Espinoza v. State, No. 07-04-0550-CR,
2005 Tex.App. LEXIS 3453 (Tex.App.Amarillo May 5, 2005 no pet.) (mem. op. not
designated for publication) (applying §§ 22.011(b)(5)).  Here, it appears the blindfolded complainant
realized very soon after Hughes began performing oral sex that the person
contacting her was not her husband.  She
became aware at that time that a sexual assault was occurring.  But, like in Espinoza, the offense was completed by then.  

Appellant
contends[6]
it is impossible to believe that the conduct which is the subject matter of
this case occurred without [complainants] knowledge or consent.   He points to her agreement that she and her
husband had discussed involving a third person in their sexual activity, and
the testimony that even after Hughes left their home the couple slept in the
same bed, that family Christmas events occurred on December 23 and 24 without
incident, and that the family continued to live together until January 24,
2008.  He points out they shared a bed
and engaged in sexual relations until their January 24 separation, and that his
wife waited until February 1 to report the assault to police.[7]  He further points to discrepancies in her
reports of the assault.  Appellant
asserts that his wife reported the incident to gain leverage in their custody
litigation.

The
jury was free to believe the complainants testimony she did not agree to
participate in a threesome, and did not consent to sexual activity with
Hughes.  The jury also heard the
testimony of Hughes and complainants friend, both of whom opined the
complainant did not consent.  The jury,
being the sole judge of the facts and credibility of the witnesses, may believe
or not believe a witness or any portion of their testimony. Sharp v. State,
707 S.W.2d 611, 614 (Tex.Crim.App.1986); Rojas v. State, 171 S.W.3d 442,
445‑46 (Tex.App.‑Houston [14th Dist.] 2005, pet.ref'd).  See also Moreno v. State, 755 S.W.2d
866, 867 (Tex.Crim.App. 1988).  Viewing
the evidence in a light most favorable to the verdict, we conclude that a
rational jury could find beyond a reasonable doubt that the complainant did not
consent to the sexual activity with Hughes and was unaware the sexual assault
was occurring.  See Mauldin v. State, No. 05-09-00513-CR, 2010 Tex.App. LEXIS 1862
(Tex.App.Dallas March 17, 2010, pet. refd) (mem. op., not designated for
publication); Espinoza, No.
07-04-0550-CR, 2005 Tex.App. LEXIS 3453.  The evidence is sufficient to support
appellant=s conviction for the offense
of sexual assault.

We
overrule appellant=s first two issues.

Admission
of Testimony

In
appellant=s last issue, he complains of
the trial court=s admission, over his hearsay
objection, of testimony from a friend of the complainant.  She testified the complainant called her the
night after the assault, December 23, and told her about the assault.  She was very stressed, very upset and was
crying. The friend testified the complainant told her she was afraid of a
divorce and was Atrying to keep it together so
her daughter could have a normal Christmas . . . .@ The
friend saw the complainant a few days later, on December 26, and testified she
was still visibly upset.  

The
trial court admitted the testimony as an excited utterance.  See
Tex. R. Evid. 803(2); Zuliani v. State,
97 S.W.3d 589, 595 (Tex.Crim.App. 2003) (applying rule).

On
appeal, the State argues the issue is not preserved for our review, and we must
agree.  After the trial courts ruling,
the friend testified without further objection to details of her telephone
conversation with the complainant. Appellant also explored the conversation,
and the complainants emotional state during it, on cross examination.  See
Lopez v. State, 253 S.W.3d 680, 684 (Tex.Crim.App. 2008) (party must
object each time inadmissible evidence is offered or obtain a running
objection); Valle v. State, 109
S.W.3d 500, 509 (Tex.Crim.App. 2003) (error in admission of evidence cured
where the same evidence comes in elsewhere without objection).  Accordingly, appellants third issue is
overruled.

            Having overruled appellants issues,
we affirm the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Do not
publish.

 

            








 

 











[1] See Tex. Penal Code Ann. ' 22.011 (Vernon Supp.
2010).  This is a second degree felony
punishable by imprisonment for a term of not more than 20 years or less than 2
and a fine not to exceed $10,000.  See
Tex. Penal Code Ann. ' 12.33 (Vernon 2003).


 





[2]  Appellant testified he met AKat@ online a few months before December
22.  He never met her in person but
testified she had Aearned@ his trust A[t]hrough [their] conversations.@  






[3]
Tex. Penal Code Ann. ' 22.011(a)(1)(c) (Vernon Supp.
2010).





[4]
Appellant
does not challenge on appeal the sufficiency of the evidence he caused Hughes's
sexual contact with his wife.  See Tex.
Penal Code Ann. § 6.04 (Vernon Supp. 2010).

 





[5]
Appellant also
cites Brown v. State, 716 S.W.2d 939
(Tex.Crim.App. 1986) and Wooden v. State,
101 S.W.3d 542 (Tex.App.Fort Worth 2003, pet. refd).  Both cases concern the law of parties.  Neither is applicable here. 





[6]
Briefs in
this case were filed before issuance of the opinion in Brooks, No. PD-0210-09, 2010 Tex.Crim.App. LEXIS 1240.  In appellants brief, he states the issue
challenging the evidence of lack of consent as one asserting factual
insufficiency.  His argument on that
issue, however, concludes with the assertion he is entitled to an acquittal.  An appellant is entitled to an acquittal only
when the evidence of guilt is legally insufficient under the Jackson v. Virginia standard.  Jackson,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.
Ed. 2d 560 (1979). To the
extent that appellant intended an argument he was entitled to a new trial under
the factual sufficiency standard applied before Brooks, we note that standard similarly required a reviewing court
to defer to the jurys resolution of conflicting testimony.  Mosley v. State,
983
S.W.2d 249, 254 (Tex.Crim.App. 1998); Matchett v.
State, 941
S.W.2d 922, 936 (Tex.Crim.App. 1996). We find that, viewing
the evidence in a neutral light under that formerly-applied standard, the jury
did not act irrationally by finding the wifes testimony about her consent
credible, and finding beyond a reasonable doubt that she did not consent to the
sexual contact with Hughes. See Grotti v. State, 273 S.W.3d 273,
283 (Tex.Crim.App. 2008); Marshall v. State, 210 S.W.3d 618, 625
(Tex.Crim.App. 2006); Watson v. State, 204 S.W.3d 404, 414-15
(Tex.Crim.App. 2006) (all applying former factual sufficiency standard).

 





[7]
The
complainant testified she and their child moved to her parents home on January
24 after appellant threatened to kill his business partner and himself when his
business failed.  She called police that
day to report her husbands threat and an officer came to their home to take
the report.  She did not mention the
December 22 sexual assault to the officer, but told her parents. As noted, the
assault was reported to police on February 1.